# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:17-CV-623-MR

| | |
|---|---|
| **MICHAEL E. MCDONALD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

## I.  PROCEDURAL BACKGROUND

The Plaintiff, Michael E. McDonald ("Plaintiff"), asserts that his status post multiple procedures of the left shoulder, depression with psychotic features, status post traumatic brain injury, and cervical disc disease constitute mental and physical impairments under the Social Security Act (the "Act") rendering him disabled.  On October 23, 2014, the Plaintiff filed an application for disability insurance benefits under Title II and Title XVIII of

the Act, alleging an onset date of April 30, 2014.[1] [Transcript ("T.") at 371]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 216, 221]. Upon Plaintiff's request, a hearing was held on February 10, 2016, before an Administrative Law Judge ("ALJ"). [T. at 43-106]. Present at the hearing were the Plaintiff, the Plaintiff's attorney, and a vocational expert ("VE"). [T. at 43]. On March 30, 2016, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. at 199-208]. On May 31, 2016, the Plaintiff requested review of this decision by the Appeals Council. [T. at 289]. On September 12, 2016, the Appeals Council remanded the case to the ALJ for further proceedings. [T. at 213-15]. On November 15, 2016, an additional hearing was held before the ALJ. [T. at 107-158]. Present at this second hearing were the Plaintiff, the Plaintiff's wife, the Plaintiff's attorney, and a VE. [T. at 107]. On March 10, 2017, the ALJ issued another decision, wherein the ALJ again concluded that the Plaintiff was not disabled. [T. at 22-37], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all

---

[1] The Plaintiff's Application for Disability Insurance Benefits reflects an alleged onset of disability date of April 30, 2014. [T. at 371]. The ALJ's decision states that the Plaintiff alleges disability since September 30, 2009, without any reference to an amended onset date. [T. at 22, 36]. The record does not appear to support an alleged onset date of September 30, 2009. As such, for purposes of this opinion, the Court uses April 30, 2014, the date listed on the Plaintiff's application.

2

available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal

quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

4

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from his alleged onset date, April 30, 2014. [T. at 24]. At step two, the ALJ found that the Plaintiff has severe impairments including status

post multiple procedures of the left shoulder, depression with psychotic features, status post traumatic brain injury, and cervical degenerative disc disease. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 25]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except the claimant is unable to push or pull with his left upper extremity and he is limited to occasional overhead reaching with left upper extremity. Moreover, the claimant is precluded from climbing ladders, ropes, and scaffolds, and he is limited to occasional crawling and balancing. In addition, the claimant is precluded from working at unprotected heights and around dangerous machines. Finally, the claimant is limited to performing simple, routine, repetitive tasks with one-to-three steps of instructions in non-public settings where there would be only superficial contact with the general public.

[Id. at 26].

At step four, the ALJ identified Plaintiff's past relevant work as an air frame and power plant mechanic, an artillery crew member, and an exterminator. [Id. at 35]. The ALJ observed that the VE "testified that a hypothetical worker with a residual functional capacity identical to that which was assigned to the [Plaintiff] would be precluded from performing the claimant's past relevant work." [Id.]. At step five, based on the testimony of

7

the VE, the ALJ concluded, considering the claimant's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including inspector, checker, and assembler. [Id. at 36]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act at any time from April 30, 2014, the alleged date of onset, through the date of the decision. [Id.].

## V. DISCUSSION[2]

In this appeal, the Plaintiff presents four assignments of error as grounds for reversal of the ALJ's decision.[3] First, Plaintiff argues the ALJ erred in failing to give substantial weight to a Veterans Administration disability rating decision. [Doc. 10 at 5]. Second, Plaintiff contends the ALJ failed to give "good reasons" for rejecting the opinions of Plaintiff's "long treating psychiatrist in favor of non-treating, non-examining medical

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[3] The Court notes that to the extent that Plaintiff attempts to weave any other disparate legal arguments or errors into his assignments of error, the Court disregards those arguments. [See Doc. 10 at 6-8, 13-14]. Such arguments must be set forth in separate assignments of error to be considered by this Court. See e.g. Gouge v. Berryhill, No. 1:16-cv-00076-MR, 2017 WL 3981146, at *2 (W.D.N.C. Sept. 11, 2017) (Reidinger, J.) (collecting cases). The Court again instructs counsel for Plaintiff to separately set forth each alleged error both so that the Court may consider them and to aid counsel in analyzing the proper framework and legal bases for these arguments.

consultants." [Id.]. Third, Plaintiff argues that the ALJ relied on testimony from the VE that appears to conflict with the Dictionary of Occupational Titles (DOT) without obtaining an explanation. [Id.]. Fourth, Plaintiff contends the ALJ failed to provide a complete function-by-function analysis of Plaintiff's nonexertional mental functions associated with Plaintiff's difficulties in the broad areas of functioning and did not make a complete finding as to Plaintiff's mental RFC. [Id.]. The Plaintiff argues these errors require remand. The Defendant, on the other hand, contends the ALJ's decision was supported by substantial evidence and reached based on the application of the correct legal standards. [Doc. 12 at 20]. Because it is dispositive, the Court turns to Plaintiff's second assignment of error.

Plaintiff argues that the ALJ erred in rejecting and assigning "little weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Deepak Joshi, M.D., without giving good reasons. In making disability determinations, the Regulations require ALJs to consider all medical opinions of record, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); SSR 06-03p (The ALJ must "consider all of the available evidence in the individual's case record in every case.").

"The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

Furthermore, the ALJ must always give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2P. Furthermore, for treating source opinions:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, <u>supported by the evidence in the case record</u>, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Id. (emphasis added). Generally speaking, more weight will be given to an opinion of a medical source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c). Further, more weight will generally be given to opinions from a claimant's treating sources than from sources rendering an opinion based upon a single or limited examination of a claimant. Id.

Dr. Joshi is a specialist in the fields of internal medicine and psychiatry. According to the record, Dr. Joshi examined the Plaintiff at least three times

– on November 6, 2015; January 11, 2016; and February 8, 2016. [T. at 1976-1980, 1993-1999, 2033-2043]. At each visit, Dr. Joshi noted in the medical record that he had reviewed the Plaintiff's previous medical records, but he did not state specifically which records those included. [T. at 1978, 1997, 2041]. The opinions at issue were provided by Dr. Joshi in a Treating Source Statement (the "Statement") that he prepared at the Plaintiff's January 11, 2016 office visit.[4] [T. at 1827, 1999]. In the Statement, Dr. Joshi listed the Plaintiff's diagnoses as post-traumatic stress disorder (PTSD); history of major depressive disorder, in remission; history of traumatic brain injury (TBI); and mild cognitive disorder secondary to TBI. Dr. Joshi opined that the Plaintiff's ability to engage in the following mental activities would be limited as follows: (1) "extreme" limitation in "[m]aintaining attention for extended periods (the 2-hour segments between arrival, 1st break, lunch, 2nd break, & departure);" (2) "moderate" limitation in "[m]aintaining regular attendance, and being punctual within customary tolerances;" (3) "marked" limitation in "[w]orking in coordination with or proximity to others without being unduly distracted by them;" and (4) "marked" limitation in "[c]ompleting

---

[4] Even though it was submitted to the ALJ, the ALJ did not consider or assign weight to the Statement in his original March 30, 2016 decision in this matter. The Appeals Council vacated that decision for that failure and directed the ALJ to evaluate and explain the weight assigned to the Statement. [T. at 214].

a normal workday and workweek without interruptions from psychologically based symptoms." [T. at 1827]. Dr. Joshi also opined that the Plaintiff has:

> a medically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and [both] of the following:
>
> A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate [and a]
>
> Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[Id.]. Dr. Joshi further remarked that the Plaintiff is a "[patient] with PTSD [and] TBI, shows hypervigilance, poor concentration [and] ability to focus for sustained periods of time." [T. at 1827].

The ALJ gave "little weight" to Dr. Joshi's opinions. [T. at 33]. As a purported basis for assigning this medical source opinion little weight, the ALJ provides that Dr. Joshi's opinions were "not well supported by the medical evidence." [Id.]. Specifically, the ALJ rationalized, without citation to any supportive record evidence, that:

> Dr. Joshi's opinion suggests the claimant to have some marked and extreme mental limitations that

would effectively preclude competitive employment. However, such a degree of restriction is clearly not commensurate with the longitudinal treatment history, which reflects that the claimant has not routinely received crisis stabilization therapy or inpatient psychiatric care. Additionally, a mental health treatment plan note dated November 18, 2015, the receipt of which was acknowledged by Dr. Joshi, reflected the claimant to have some paranoia when out in public, but his social interaction was nonetheless characterized as appropriate. The claimant was also documented to have intact working and remote memory. (Exhibit 14F, pp.201, 205). Moreover, although Dr. Joshi reported that the claimant also experiences hypervigilance, poor concentration, and an inability to focus for sustained periods, these contentions are all subjective and based on the claimant's say-so, as the medical evidence of record does not provide any objective findings of limitations in this regard, only his complaints of such. It is also instructive that that the recent records document the claimant laughing and smiling at visits – behavior that is clearly not consistent with a finding of "marked" limitations. (E.g. Exhibit 14F, pp.150, 169). Further, as outlined above, the claimant's alleged diagnosis of PTSD is not entirely supported by the record and the inconsistencies surrounding his reports of the helicopter crash.[5]

---

[5] Plaintiff served in the Army from August 11, 2004 through April 29, 2014. He was a helicopter mechanic. [T. at 28, 371]. After he was discharged, the Plaintiff reported having witnessed the crash of a French helicopter in which several people were killed and the pilot broke both legs jumping out a window. [Id. at 28]. The ALJ found the Plaintiff's report of this incident incredible because the Plaintiff waited until after he was discharged to report it to mental health professionals. [Id.]. The Plaintiff explained that this was the main trauma he suffered while in the military but that he declined to report it previously because he has an autistic son and needed military insurance benefits and did not want to risk being discharged. [Id. at 28, 110-111]. The Plaintiff also testified that his PTSD symptoms did not begin until after he was discharged and had returned home. [Id. at 113].

[Id. at 33].

The ALJ failed to satisfy Rule 96-2P by failing to provide good, specific reasons with citation to the record evidence in his decision for the weight he ascribed to Dr. Joshi's opinions. First, the ALJ does not explain or otherwise support how the Plaintiff having the "marked" and "extreme" limitations noted in the Statement is inconsistent with the Plaintiff's "lack of routinely received crisis stabilization therapy or inpatient psychiatric care." [T. at 33]. Second, the ALJ relied on David L. Butler, M.D.'s, November 18, 2015 assessment of the Plaintiff as socially "appropriate" to dismiss Dr. Joshi's opinions. Dr. Butler is a neuropsychologist who also treated the Plaintiff. [T. at 2024]. Dr. Butler's report, however, is almost entirely consistent with Dr. Joshi's opinions. Namely, Dr. Butler notes that the Plaintiff was "seen today in follow up for [major depressive disorder] and PTSD." [T. at 2025]. Dr. Butler noted that the Plaintiff has "mood dyscontrol," violence and aggression, learning or memory difficulties due to a TBI, reaction to sudden and loud noises, concentration difficulties, and is easily distracted. [Id. at 2024-25]. The Plaintiff reported that he still has nightmares and that his flashbacks are "about the same." [Id. at 2026]. He "sometimes sweats at night, still feels depressed most of the time, likes to isolate and not be around family, has crying spells 2-3 times a week, just thinking about his trauma." He "avoids

crowds" and his "anger is 'off and on.'" [Id.]. The ALJ does not explain why one word (i.e. "appropriate") in Dr. Butler's report causes him to dismiss the very similar report of Dr. Joshi. Moreover, the ALJ's interpretation of the term "socially appropriate interaction" in the Butler report appears to be inconsistent with the rest of the Butler report. But the ALJ does not address or even acknowledge this inconsistency while adopting the Butler report over the Joshi Statement.

Third, the ALJ gives no weight to the Plaintiff's self-reports of "hypervigilance, poor concentration, and an inability to focus for sustained periods" because "the medical evidence of record does not provide any objective findings of limitations in this regard, only his complaints of such" and with the Plaintiff's diagnosis of PTSD because the Plaintiff's "alleged diagnosis of PTSD is not entirely supported by the record and the inconsistencies surrounding his report of the helicopter crash." [T. at 33]. The ALJ, however, fails to cite to any record evidence that either undermines these self-reports or reflects any healthcare provider's disbelief of the Plaintiff's complaints. Moreover, the ALJ offered no reason for rejecting the healthcare providers' diagnosis of PTSD or the medical findings on which it was based. Contrary to the regulations, the ALJ substituted his lay judgment and opinions for the judgment and opinions of medical professionals that

15

have diagnosed the Plaintiff with PTSD. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (finding the ALJ's characterization of the claimant's treatment as "conservative" was "difficult to reconcile with the record" and amounted to the ALJ "improperly 'playing doctor' in contravention of the requirements of applicable regulations") (citing 20 C.F.R. §§ 404.1529, 416.929; Hill v. Colvin, 807 F.3d 862, 868 (7th Cir. 2015)).

Finally, the ALJ noted that the Plaintiff's recent "laughing and smiling at visits" with Dr. Joshi are "clearly not consistent with a finding of 'marked' limitations." [T. at 33]. The ALJ, however, failed to mention that Dr. Joshi characterized the Plaintiff's laughter as an "inappropriate affect to certain events." [T. at 1997-98]. Specifically, the Plaintiff laughed as he recounted his thoughts about "the military 'people dying and the mortors [*sic*], people in car wreck [*sic*], … people dying in distant family…died from heart attack." [Id. at 1997]. He also laughed when recounting that he was too depressed to attend a Monster Jam event that he had paid $100 for and that he had "hurt [his] wife in the leg with a BB gun" when he was off his medication for a week. [Id. at 1998]. Further, documentation of smiling in two records out of over 1,500 pages of medical records is insignificant and certainly not a "good reason" for the ALJ to have assigned "little weight" to Dr. Joshi's opinions. [See Doc. 10 at 11].

In conclusion, the ALJ failed to cite good reasons, supported by citations to the record evidence, for rejecting the opinions of the Plaintiff's treating psychiatrist. As such, the ALJ's conclusion regarding the weight of Dr. Joshi's medical opinions was not supported by substantial evidence.

In light of this decision, Plaintiff's other assignments of error need not be addressed but may be addressed by him on remand.

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ shall properly weigh all medical opinions, including but not limited to the medical opinions of Plaintiff's treating psychiatrist, Dr. Joshi, as more fully set forth in this opinion and in accordance with Rule 96-2P. The ALJ is also directed to address the discrepancy in the Plaintiff's alleged disability onset date as more fully set forth above, as well as the other issues presented by the Plaintiff.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 11] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of

the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

    **IT IS ORDERED.**

Signed: January 3, 2019

Martin Reidinger
United States District Judge